OPINION OF THE COURT
Paul G. Feinman, J.
Factual and Procedural Background
On October 11, 2002, plaintiff Samad-Matias slipped and fell on water which had allegedly accumulated in one of the buildings which comprise City College of New York at West 138th Street and Convent Avenue, New York, New York. She sustained serious injuries to her left knee and a broken nose.[1] A notice of claim was served upon the City of New York on December 17, 2002 and again on December 19, 2002 (order to show cause, exhibit A). Also on December 19, 2002, a notice of claim was served on the City University of New York (order to show cause, exhibit C). Subsequently, a notice of claim was served upon the State of New York on November 21, 2003 (order to show cause, exhibit B). By decision and order of the justice previously assigned to supervise this matter, the claims against City College and City University of New York (CUNY) pending in this court were permitted to be discontinued because the Court of Claims has exclusive jurisdiction over tort claims asserted against CUNY (exhibit F, decision and order dated April 8, 2004, Motion Sequence No. 001). The court severed the balance of the action, and ordered it to proceed.
On November 9, 2004, during the deposition of Sophia Pontoppidan, the witness provided by the City of New York who performs title searches for the Department of Finance and who performed a title search for the City College building at issue, it was revealed that the actual owner of the premises was the Dormitory Authority of the State of New York (order to show cause, exhibit D [hereinafter Pontoppidan EBT], at 18). The witness stated that the search had been “complicated,” because her maps showed that the college is on two lots and that West 138th Street does not actually intersect Convent Avenue (Pontoppidan EBT at 10, 17).[2] She therefore consulted two deeds dated May 21, 1973 and February 17, 1982, the first between the City of New York and the Dormitory Authority, and the *209 second between the State of New York and the Dormitory Authority, respectively, and was able to determine that the Dormitory Authority had at some point been conveyed the property including the building in which plaintiff fell (Pontoppidan EBT at 18). She was not able to find any leases concerning the property (Pontoppidan EBT at 26-27, 29-30).
Analysis
Plaintiffs move by order to show cause dated December 29, 2004 for leave to file a late notice of claim on the Dormitory Authority of the State of New York (DASNY). General Municipal Law § 50-e, which applies to tort claims against a public corporation, requires that a notice of claim must be served on the public entity within 90 days after the claim arises (General Municipal Law § 50-e [1] [a]). The court may, in its discretion and upon application by the plaintiff, extend the time to serve a notice of claim (General Municipal Law § 50-e [5]). Among the factors set forth in the statute that may be considered by the court are whether the defendant acquired actual knowledge of the essential facts constituting the claim within the 90-day period or a reasonable time thereafter, whether the claimant was an infant or was incapacitated, whether in serving the notice the claimant made an “excusable error” concerning the identity of the defendant to be served, and whether the delay prejudiced the defendant’s ability to maintain a defense. Even where the court grants an extension of time to serve the notice of claim, it must be served within the statute of limitations period, i.e., not more than one year and 90 days after the cause of action accrued, unless the statute of limitations was tolled (General Municipal Law § 50-e [5]; see also Chimera v New York State Dormitory Auth., 273 AD2d 802 [4th Dept 2000] [actions against DASNY must be commenced within one year and 90 days of the date of occurrence, citing Public Authorities Law § 1691]). In the case at bar, the accident occurred on October 11, 2002. Therefore, by the court’s calculation, the plaintiffs were required to serve their notice of claim upon DASNY no later than January 9, 2004.
In support of their motion, plaintiffs contend that unless DASNY can establish substantial prejudice, they should be allowed to serve their late notice of claim, citing among others Matter of Gerzel v City of New York (117 AD2d 549 [1st Dept 1986]), which granted the plaintiff an extension of time to file his notice of claim after the 90-day period had elapsed. In Ger *210 zel, it was “manifest on the record” that the City had acquired actual knowledge of the claim because there was evidence that a sergeant had taken two photographs of the steps, the plaintiff reported the accident to an employee of the premises, an unidentified individual took down the details of the accident including the plaintiffs statement, and the report was filed on the premises which was owned by the City (117 AD2d at 550-551). Plaintiffs argue that, in this instance, DASNY also had actual knowledge of the accident. They note that, in addition to the notices of claim served upon the City, of New York and the City University of New York within 90 days, an incident report dated October 23, 2002 was prepared for the New York State Department of Labor (order to show cause, exhibit H), and that seven photographs were attached to the claim served upon the Attorney General’s Office (order to show cause, exhibit I). They conclude that “DASNY is certainly united in interest with either the City of New York, the State of New York or CUNY, all of whom had timely notice” (Platz reply 1Í17).
In Gerzel, only seven months had elapsed between the time of the accident and plaintiffs attempt to serve a notice of claim and the making of his motion to be allowed leave to serve a late notice of claim. In other words, the motion fell within the parameters of General Municipal Law § 50-e (5), in that the statute of limitations period had not elapsed. The other decisions cited by plaintiffs also concern motions made prior to the running of the statute of limitations,[3] with the exception of Young v Board of Educ. of City of N.Y. (1 AD3d 194 [1st Dept 2003]), which concerned a claim of sexual abuse against a nine-year-old student that occurred in 1998, where the petitioners only moved in September 2001 for leave to serve a late notice of claim. In Young, petitioners’ motion was granted on appeal only to the extent that a hearing was ordered to determine whether the respondents timely acquired actual notice of the alleged facts giving rise to the claim. The Young court did not explicitly address the tolling effect of infancy on the statute of limitations, but cited Cohen v Pearl Riv. Union Free School Dist. (51 NY2d 256, 265 [1980]) and Matter of Potter v Board of Educ. of *211 City of N.Y. (43 AD2d 248 [1st Dept 1974]), both of which discussed infancy and tolling the running of the statute of limitations (Young at 195).
In opposing the motion, DASNY relies on case law such as Sarjoo v New York City Health & Hosps. Corp. (309 AD2d 34, 39 [1st Dept 2003], lv denied 1 NY3d 506 [2004]), which states, succinctly, “If the application for leave [to serve late notice of claim] is not made prior to the running of the statute of limitations, it may not thereafter be granted,” and Matter of Janvier v New York City Health & Hosps. Corp. (162 AD2d 342, 343 [1st Dept 1990], lv denied 76 NY2d 711 [1990]), which states, “The time to file a late notice of claim may not be extended beyond the time limitation for the commencement of an action by a claimant against a public corporation (General Municipal Law § 50-e [5]).” DASNY also suggests, conveniently overlooking the deposition testimony of the City’s witness concerning the complexity of determining ownership of the property, that plaintiffs merely needed to look in the public records of the New York City Department of Buildings for block number 1957 and lots 200 and 105, and they would have discovered that DASNY was the owner of the property (Tarsitano affirmation in opposition 1i 10). Here, unlike the attorney in Seif v City of New York (218 AD2d 595, 596 [1st Dept 1995]), who the court concluded could “easily” have ascertained the proper owner of the building, it is apparent that the public records concerning this particular CUNY building are far from clear.
The doctrine of equitable estoppel will be invoked only under exceptional circumstances (Borges v Sallis, 291 AD2d 271 [1st Dept 2002]), none of which are present here. Plaintiffs argue, for instance, that they were never put on notice by defendants that they had failed to sue the proper entity. However, defendants had no duty to inform plaintiffs, either in an affirmative defense or by any other means, that they had failed to serve the proper party (see, Kroin v City of New York, 210 AD2d 95 [1st Dept 1994]). Plaintiffs also argue that the City of New York failed to comply with the April 21, 2004 preliminary conference order, or subsequent demands and orders, to produce documents including any leases which would have potentially clarified the issue of ownership. This argument fails because the preliminary conference took place after the statute of limitations had run, and plaintiffs’ demands were already time-barred. Although plaintiffs cite several decisions in which courts have held that errors concerning the identity of the correct governmental entity *212 to be sued can be excused provided that a prompt application for relief is made after discovery of the error, the cases all concern situations falling within the statute of limitations period (see, e.g., Matter of Gherardi v City of New York, 294 AD2d 101 [1st Dept 2002]; Matter of Oliveira v Dormitory Auth. of State of N.Y., 262 AD2d 59 [1st Dept 1999]; Matter of Harris v Dormitory Auth. of State of N.Y., 168 AD2d 560, 561 [2d Dept 1990]; Matter of Farrell v City of New York, 191 AD2d 698 [2d Dept 1993]). While the court is not unsympathetic to the concern that delays in discovery by one or more defendants can lead to a claim against an as-of-then unknown proper defendant becoming stale, here the extant record would not support a finding that but for the defendants’ delay in providing discovery, plaintiffs would have been able to timely learn of the error and sue the proper party. After purchasing an index number and filing their complaint in November 2003, the plaintiffs took no action to request judicial intervention. Had they promptly done so, the case scheduling order or preliminary conference order might well have issued and a compliance conference been scheduled within the time permitted by the statute of limitations. The first request for judicial intervention in this action was filed by the defendant State of New York in March 2004 in connection with its motion to dismiss. This resulted in the previously noted April 8, 2004 order discontinuing the action as to the State, and an April 21, 2004 case scheduling order. In short, given the plaintiffs’ delay in seeking judicial intervention to obtain discovery, even if there were not the statute of limitations problem, it cannot be said that the equities preponderate in favor of plaintiffs.
Plaintiffs’ attempts to argue that DASNY must have had timely notification of the accident and that it had actual knowledge of the facts constituting plaintiffs’ claim are not persuasive. Notice to the City or to CUNY cannot be imputed to DASNY (see, Matter of Hobgood v New York City Hous. Auth., 253 AD2d 555 [2d Dept 1998]). However, the statement by DASNY’s attorney that DASNY never knew of plaintiffs accident (Tarsitano affirmation 1Í12) carries little force, given that it is not a statement made by an individual with firsthand knowledge (cf., Matter of Oliveira v Dormitory Auth. of State of N.Y., 262 AD2d 59 [1999] [holding that the defendant had actual knowledge of the incident complained of based on its failure to deny receipt of a copy of the accident report]).
DASNY contends that it would be severely prejudiced if it were brought into the litigation at this late date, because the *213 presence of water on the floor was transitory and no meaningful investigation could be conducted more than two years after the accident. Plaintiffs allege that the condition was not transitory, but also cite Matter of Connaughton v New York City Tr. Auth. (301 AD2d 389 [1st Dept 2003]), which noted that an accumulation of water and ice on the stairs in question was either transient such that the respondent was unlikely to have been able to timely investigate even if notice had been promptly served or, if caused by a clogged drain that the respondent had a duty to maintain, should have generated inspection and maintenance records which could be produced. Although Connaughton might be persuasive in other situations, here, where plaintiffs have not established that DASNY should be estopped from claiming untimely notice, the court is without discretion pursuant to General Municipal Law § 50-e (5) to permit them to file a late notice of claim. Their motion for leave to file a late notice of claim must be denied. It is therefore ordered that plaintiffs’ motion for leave to file a late notice of claim is denied.

. Her husband, coplaintiff Mohammad, claims loss of services, support and consortium.

. This is due to the existence of the Adolph Lowisohn Plaza (Pontoppidan EBT at 17).

. See, Matter of Ansong v City of New York, 308 AD2d 333 (1st Dept 2003); Heiman v City of New York, 85 AD2d 25 (1st Dept 1982); Matter of Reisse v County of Nassau, 141 AD2d 649 (2d Dept 1988); Matter of Buono v City of New York, 133 AD2d 685 (2d Dept 1987); Rechenberger v Nassau County Med. Ctr., 112 AD2d 150 (2d Dept 1985); Ansaldo v City of New York, 92 AD2d 557 (2d Dept 1983); Weinzel v County of Suffolk, 92 AD2d 545 (2d Dept 1983); Dickey v County of Nassau, 65 AD2d 780 (2d Dept 1978).